# Authority to Use Troops to Prevent Interference With Federal Employees by Mayday Demonstrations and Consequent Impairment of Government Functions

The President has inherent constitutional authority to use federal troops to ensure that Mayday Movement demonstrations do not prevent federal employees from getting to their posts and carrying out their assigned government functions.

This use of troops is not prohibited by the Posse Comitatus Act.

April 29, 1971

MEMORANDUM OPINION FOR THE ACTING GENERAL COUNSEL
DEPARTMENT OF THE ARMY

In light of the announced purpose of the "Mayday Movement" to halt the functioning of the federal government by preventing federal employees from reaching their agencies, the question has arisen as to whether there is authority to use federal troops to insure access by federal employees to their agencies. The question involves the relationship between the inherent authority of the President to use troops to protect federal functions and the Posse Comitatus Act, 18 U.S.C. § 1385, which prohibits the use of troops for law enforcement purposes "except in cases and under circumstances expressly authorized by the Constitution or Act of Congress."

It is the opinion of this Office that the Posse Comitatus Act does not prevent the use of troops to protect the functioning of the government by assuring the availability of federal employees to carry out their assigned duties and that troops may therefore be utilized to prevent traffic obstructions designed to prevent the access of employees to their agencies.

In a series of memoranda, this Office has taken the position that the Posse Comitatus Act applies to the use of troops to perform essentially law enforcement duties and does not impair the President's inherent authority to use troops for the protection of federal property and federal functions.[1]

---

[1] *See* Memorandum for the General Counsel, Department of the Army, from the Office of Legal Counsel, *Re: Use of Federal Troops to Protect Government Property and Functions at the Pentagon Against Anti-War Demonstrators* (Oct. 4, 1967); Memorandum for Robert E. Jordan, III, General Counsel, Department of the Army, from William H. Rehnquist, Assistant Attorney General, Office of Legal Counsel, *Re: Statutory Authority to Use Federal Troops to Assist in the Protection of the President* (Nov. 12, 1969); Memorandum for the General Counsel, Department of the Army, from the Office of Legal Counsel, *Re: Authority to Use Troops to Execute the Laws of the United States* (Mar. 27, 1970); Memorandum for Robert E. Jordan III, General Counsel, Department of the Army, from William H. Rehnquist, Assistant Attorney General, Office of Legal Counsel, *Re: Authority to Use Troops to Protect Federal Functions, Including the Safeguarding of Foreign Embassies in the United States* (May 11, 1970).

These conclusions are based on the history of the Posse Comitatus Act, which was originally enacted in 1878 for the purpose of preventing United States Marshals, on their own initiative, from calling upon troops to assist them in performing their duties. *See* 7 Cong. Rec. 3718, 3727, 3845–49, 4240–47 (1878). That Act was designed to prevent use of troops in direct law enforcement under command of minor civilian officials and does not reach essentially protective duties. The conclusions are likewise supported by the historic and judicial recognition of the President's inherent powers to use troops to protect federal property and functions as a necessary adjunct of his constitutional duties under Article II, Section 3 of the Constitution. Edward S. Corwin, *The President: Office and Powers (1787–1957)* 130–39 (4th ed. 1957).

The Supreme Court has recognized this authority. Although *In re Neagle*, 135 U.S. 1 (1890), involved the use of a marshal to protect a federal officer, the Court indicated that troops might have been used when necessary. Citing the example of obstruction to the mails, it noted that troops could be used to prevent such obstruction to a vital federal function pursuant to the inherent authority of the President. *Id.* at 65. When the mails were obstructed during a railway strike, President Cleveland ordered out the troops for the purpose of protecting federal property and "removing obstructions to the United States mails."[2] The Court upheld this action:

> The strong arm of the national government may be put forth to brush away all obstructions to the freedom of interstate commerce or the transportation of the mails. If the emergency arises, the army of the Nation, and all its militia, are at the service of the Nation to compel obedience to its laws.

*In re Debs*, 158 U.S. 564, 582 (1895).

The intended obstruction of the Mayday Movement, as publicly announced, extends beyond a single federal function such as the carriage of the mails, although the mails could certainly be affected. The objective is to obstruct all federal functioning in the nation's capital. It is the President's constitutional duty to protect this functioning and prevent its obstruction, and he has the inherent authority to use troops, if necessary, to carry out this duty.

While this authority rests on inherent power, rather than specific statutes, it should be noted that if serious violence occurs beyond the control of police, the

---

[2] Proclamation No. 366 (July 8, 1894), *reprinted in* 13 *A Compilation of the Messages and Papers of the Presidents* 5931 (James D. Richardson ed., 1909). While President Cleveland issued a proclamation in this instance, it should be noted that no formal proclamation is necessary to utilize troops in a protective, as distinguished from law enforcement, capacity. The requirement of a proclamation stems from the express language of 10 U.S.C. § 334, which specifies that the use of the military under chapter 15 of that title shall be accompanied by a presidential proclamation. Since the proposed use of the military to protect the federal functions is based on the President's constitutional authority, rather than on that chapter, no proclamation is necessary here.

President could also, upon proper request, invoke his authority to use troops pursuant to 10 U.S.C. §§ 331–334. Likewise, if a federal court order should be defied, the President on his own initiative could formally call out troops pursuant to 10 U.S.C. § 333. It is our view, however, that where federal functions are obstructed, invocation of these statutory provisions is not essential to the use of troops in a protective capacity.

WILLIAM H. REHNQUIST
*Assistant Attorney General*
*Office of Legal Counsel*